UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232(24) (JRT/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TARA NICHOLE CREASON,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant Tara Nichole Creason receive a sentence of time served. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

### I. Relevant Facts

#### A. Offense Conduct

On October 20, 2020, Creason was charged in a 53-count indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349. Creason entered a guilty plea pursuant to a plea agreement on January 13, 2023. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 1502).

Creason participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. Between 2009 and 2020, Creason worked as a telemarketer, and later as a manager, for several companies involved in fraudulent

magazine sales. At times during the conspiracy, the companies ran call centers in Colorado, Arizona, and Arkansas.

Creason and others perpetuated a conspiracy to defraud victims across the country, many of whom were older or otherwise susceptible to fraud. Creason and her co-conspirators fraudulently inducing consumers into making payments related to purported magazine subscriptions. Telemarketers called lists of consumers and made a series of lies and misrepresentations, including that the telemarketer was calling from the consumer's existing magazine company and was calling in order to reduce the monthly payments for an existing magazine subscription. But in reality, the company had no existing relationship with the consumer and tricked the consumer into paying for an expensive, new magazine subscription that they did not want or understand they were ordering.

Creason worked as a telemarketer at several of these companies. In that role, she used fraudulent sales scripts, which were provided by the company, to call victims and make a series of deliberate lies and misrepresentations about how the company could lower the monthly cost of a subscription or renew a subscription that the victim was receiving at a lower cost. This was not true, and Creason and the company charged the victim for a subscription that they did not want. Creason later supervised the day-to-day operations of the call center in Little Rock, Arkansas.

In the course of the scheme, Creason and the Little Rock, Arkansas call center defrauded thousands of victims and collected over $260,000 from victims as a result of the fraudulent scheme.

### B. Defendant's Criminal History

Creason has an extensive criminal history. However, her criminal history stems from conduct that occurred nearly 20 years ago and consists primarily of drug and property crimes that appear to have stemmed from her struggles with addiction. Apart from this case, Creason does not have any other criminal history since 2006.

### C. Defendant's Personal History

Creason faced no shortage of challenges in her life. She was born and raised in Denver, Colorado. Her parents separated when she was a toddler, and each remarried. Her parent's future relationships were tumultuous, including contentious divorces and partners who abused alcohol.

Beginning in high school, Creason began skipping classes and experimenting with drugs. She first tried marijuana at age 10 and was using it regularly by age 14. By age 19, she was a methamphetamine addict (although she has not used drugs since 2006).

When she was 15, she became pregnant and had her first child. She ultimately dropped out of school in the tenth grade when her daughter was born. When Creason's daughter was 8 years old, she died in a tragic ATV accident while visiting Creason's mother. This resulted in significant trauma to Creason and negatively affected her relationship with her mother.

Since 2020, Creason has been living with her husband in Michigan, where she lives with her 13-year-old and newborn children.

## II. Argument

### A. Legal Background

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### B. The Presentence Investigation and Guidelines Calculations

The United States has reviewed the PSR prepared by the U.S. Probation Office. The United States did not object to the facts included in the PSR, although it did object to the PSR to the extent that the criminal history category differed from that included in the plea agreement. The PSR concluded that the total offense level is 25, and the criminal history category is VI. Based on this, the Guidelines range term of imprisonment is 110 to 137 months. (PSR ¶ 179.)

## C. The Appropriate Sentence

A careful consideration of the Section 3553(a) factors warrants a sentence of time served.

### 1. <u>The Nature and Circumstances of the Offense.</u>

Creason's conduct was unquestionably serious and warrants a correspondingly serious sentence. She participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. Although she knew that she and others at the company were committing fraud, she continued to work there day in and day out and perpetrated the scheme for years.

At the same time, Creason played only a small part in a large-scale fraud. Creason worked primarily as a telemarketer. She did not own or operate any of the companies where she worked. She did not develop the fraud scheme or write the fraudulent scripts. Nor did Creason get rich participating in the scheme—she was only paid a small, hourly wage for her work.

Although Creason was well-aware that she and others at the company were committing fraud, the fact that the companies she worked for operated an office and call center where numerous other telemarketers also worked provided an air of legitimacy to an illegitimate, fraudulent company. In many ways, this allowed the companies to recruit otherwise well-intended individuals like Creason, who were merely seeking a paycheck, into the fraudulent work. This is not an excuse for Creason's conduct, although it helps explain how she became involved in it in the first place.

2. <u>The History and Characteristics of the Defendant.</u>

Creason has faced no shortages of challenges. Her daughter died tragically when she was 8 years old, which she has struggled to cope with in the intervening years. She also has a newborn child at home, along with a teenager, who both rely on her for care and support.

On the other hand, Creason has a high school diploma and was capable of obtaining employment at any variety of different, legitimate lines of work (as demonstrated by the fact that at times, she did work in other, legitimate fields). Instead, she chose to work at a fraudulent telemarketing company.

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, Creason requires a sentence that will not only prevent her from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. Creason and others who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims. At the same time, Creason has already dealt with the significant consequences and effects of a felony conviction, including losing her job.

A sentence of time served will serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes.

### III. Conclusion

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of time served.

Respectfully submitted,

Dated: May 1, 2023

ANDREW M. LUGER
United States Attorney

*/s/ Harry M. Jacobs*

BY:  JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
Assistant U.S. Attorneys