UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232(10) (JRT/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JEFFREY LEE SMOLIAK,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant Jeffrey Lee Smoliak receive a sentence of six months of home confinement. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

## I. Relevant Facts

### A. Offense Conduct

On October 20, 2020, Smoliak was charged in a 53-count indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349. Smoliak entered a guilty plea pursuant to a plea agreement on December 21, 2022. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 1491).

Smoliak participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. Between 2010 and 2020, Smoliak worked as a

telemarketer for several Florida-based companies involved in fraudulent magazine sales.

Smoliak and others perpetuated a conspiracy to defraud victims across the country, many of whom were older or otherwise susceptible to fraud. Smoliak and his co-conspirators fraudulently inducing consumers into making payments related to purported magazine subscriptions. Telemarketers called lists of consumers and made a series of lies and misrepresentations, including that the telemarketer was calling from the consumer's existing magazine company and was calling in order to reduce the monthly payments for an existing magazine subscription. But in reality, the company had no existing relationship with the consumer and tricked the consumer into paying for an expensive, new magazine subscription that they did not want or understand they were ordering.

Smoliak worked as a telemarketer at several of these Florida-based companies. In that role, he used fraudulent sales scripts, which were provided by the company, to call victims and make a series of deliberate lies and misrepresentations about how the company could lower the monthly cost of a subscription or renew a subscription that the victim was receiving at a lower cost. This was not true, and Smoliak and the company charged the victim for a subscription that they did not want.

In the course of the scheme, Smoliak and the companies he worked for defrauded thousands of victims and collected over $50 million from victims as a result of the fraudulent scheme.

## B. Defendant's Criminal History

Smoliak has an extensive criminal history. His first interactions with the criminal justice system date back to 1993, when he was 18 years old and pled guilty to residential burglary. In the ensuing years, Smoliak received convictions for resisting arrest, domestic battery, theft, controlled substance possession, possession of drug paraphernalia, and grand theft.

Although Smoliak undoubtably has a very significant criminal history, they primarily are low level drug or property crimes that appear to stem from a long and significant history of drug and alcohol addiction and abuse.

In total, Smoliak has a criminal history score of 29, corresponding to a criminal history category of VI.

## C. Defendant's Personal History

Smoliak was born into the magazine industry. His father was a door-to-door magazine salesman who traveled throughout the country selling magazines.

Smoliak faced significant hardship in his childhood. Following his parents' divorce, his mother re-married a man that was physically and emotionally abusive to Smoliak. After that relationship ended, his mother worked multiple jobs to provide for the family. Smoliak grew up in a neighborhood with serious crime and violence.

From an early age, Smoliak had struggles with addiction. Beginning at age 16, he was a habitual cocaine user. In later years he tried heroin and other opiates, including regular intravenous heroin use. Smoliak had two brothers, both of whom

are deceased. One was killed during a robbery during a drug deal and the other died from a fentanyl overdose.

He has participated in more than 10 stints of substance dependency programming, only completing two. However, from the time he was indicted in this case, he has submitted 16 monthly random drug tests, which have all been negative for illegal substances.

## II. Argument

### A. Legal Background

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

4

### B. The Presentence Investigation and Guidelines Calculations

The United States has reviewed the PSR prepared by the U.S. Probation Office. The United States did not object to the PSR. The PSR concluded that the total offense level is 30, and the criminal history category is VI. Based on this, the Guidelines range term of imprisonment is 168 to 210 months. (PSR ¶ 238.)

### C. The Appropriate Sentence

A careful consideration of the Section 3553(a) factors warrants a sentence of time served.

#### 1. <u>The Nature and Circumstances of the Offense.</u>

Smoliak's conduct was unquestionably serious and warrants a correspondingly serious sentence. He participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. Although he knew that he and others at the company were committing fraud, he continued to work there day in and day out and perpetrated the scheme for years.

At the same time, Smoliak played only a small part in a large-scale fraud. In many ways, Smoliak did not seek out a career in telemarketing or fraud. He was drawn to the magazine industry by his father, who was a longtime salesman. To Smoliak, it was an easy way to make a little amount of money to fuel his substance abuse. He worked as a telemarketer and did not own or operate any of the companies where he worked. He did not develop the fraud scheme. Nor did he get rich participating in the scheme—he was only paid a small, hourly wage for his work, in many cases by bosses who took advantage of addiction issues to use his sales acumen for their own benefit.

Smoliak had a mitigating role as a telemarketer at Anthony Moulder's magazine company, Gulf Coast Readers. Although he, along with all the other employees, is jointly responsible for a very significant fraud loss amount of over $50 million, Smoliak himself played a minor role in that total loss. In his plea agreement, Smoliak agreed he is responsible for $15,000 in restitution.

2. <u>The History and Characteristics of the Defendant.</u>

Smoliak has faced no shortages of challenges. He has struggled with incredibly significant drug and alcohol addictions through the majority of his life. His addiction has, up until the time of this prosecution, been a defining characteristic. His addiction has driven nearly all the poor and criminal decisions he has made. His addiction drove him to the fraudulent magazine industry, where he used his skills as a salesperson to defraud thousands of vulnerable victims, just to receive small payouts or salaries to continue to fuel his addiction.

3. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, Smoliak requires a sentence that will not only prevent him from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. Smoliak and others who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a

6

large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims. At the same time, Smoliak has already dealt with the significant consequences and effects of a felony conviction. And Smoliak has used his time of pre-trial supervision to effect huge positive changes in his life, including the longest period of sobriety in decades.

A sentence of six months home confined will serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes. Such a sentence should also include conditions aimed at providing Smoliak with the treatment and counseling he needs to continue his sobriety.

### III. Conclusion

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of six months of home confinement.

Respectfully submitted,

Dated: May 30, 2023

ANDREW M. LUGER
United States Attorney

/s/ *Harry M. Jacobs*

BY: JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
Assistant U.S. Attorneys