UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 20-CR-232 (33) (JRT/DTS) |
| Plaintiff, | |
| vs. | **DEFENDANT'S POSITION WITH RESPECT TO SENTENCING** |
| ERIC PATRICK MCGARRITY, | |
| Defendant. | |

The Defendant, ERIC PATRICK MCGARRITY, by and through his attorney, FREDERICK J. GOETZ, and pursuant to U.S.S.G. §6A1.2, and Local Rule 83.10, respectfully submits the following position regarding sentencing factors in his case.

## BACKGROUND

Eric McGarrity is one of 43 defendants charged in a 53 Count Indictment including counts of conspiracy to commit mail fraud (Count 1), mail fraud (Counts 2-10), and wire fraud (Counts 11-53). The charges arise out of a telemarketing fraud scheme involving magazine subscription sales. Dozens of individuals working under dozens of companies sold phony and fraudulent magazine subscriptions to unsuspecting customers using high-pressure

telemarketing call centers. (Presentence Investigation Report ("PSI") at ¶13). The scheme targeted elderly and vulnerable individuals. Id.

Mr. McGarrity worked as a telemarketer for a few different companies and, following the script and methods he had learned, briefly tried to operate his own company. PSI at ¶¶ 64, 108. When Mr. McGarrity was first detained by law enforcement in connection with this case on February 19, 2020, he agreed to speak with law enforcement and readily admitted his guilt. Within a few days of his arrest and initial appearance on October 27, 2020, McGarrity agreed to cooperate with the government and, during a lengthy proffer meeting, provided complete and truthful information about his involvement in the offense and everything he knew that related to the magazine conspiracy. Within less than a month following his arrest, McGarrity appeared before the Honorable John R. Tunheim and, pursuant to a plea agreement with the government, entered a plea of guilty to Count 1.

Mr. McGarrity has long struggled with sobriety. PSI ¶¶ 152-154, 171-175. Alcohol abuse underlies most of his criminal history points.[1] He has also

_____

[1] McGarrity was intoxicated when he committed the offense of criminal sexual conduct in the third-degree at age 18, the basis for 3 of his 8 criminal history points. PSI ¶ 136. Alcohol abuse certainly underlies his fourth degree DUI conviction from 2009, the basis for a further criminal history point. PSI ¶ 137. McGarrity's other four criminal history points stem from a failure to register as a predatory offender conviction, a contributing to the need for child protection or services conviction, and two points for being under court

struggled with panic attacks and anxiety. PSI ¶¶ 165-166. Following his initial appearance in the instant case on October 27, 2020, Mr. McGarrity was placed on conditional release. Doc. No. 73. He did well for a number of months and was able to maintain his sobriety.

Mr. McGarrity has three children. PSI ¶¶ 152-153. While on conditional release following his entry of his plea of guilty, Mr. McGarrity learned not only that his now ex-wife had divorced him but that she had fled the state with his two young children. PSI ¶¶ 153, 155-159. These traumatic events caused Mr. McGarrity's life to fall apart in early January 2021, as he went into what was surely an undiagnosed mental health crisis. PSI ¶¶ 155. He then relapsed and fell back into abusing alcohol and drugs. Id. Ashamed of his relapse into addiction and grief stricken by the loss of his children, McGarrity stopped contacting pre-trial services and left Minnesota. PSI ¶¶ 155-156. Eventually, Mr. McGarrity learned that his ex-wife and taken his two young children to Mexico with her and had placed them in danger. PSI ¶¶ 156-158. McGarrity found his ex-wife and children in Mexico and was instrumental in getting her to bring the children back to the United States. PSI ¶¶ 157-158. Having accomplished that, McGarrity went into treatment and, after he completed it,

---

supervision for all of these offenses at the time of his participation in the instant offense. PSI ¶¶ 138, 141, 143.

voluntarily surrendered to U.S. law enforcement officials on August 17, 2021, at a United States/Mexico border crossing in Texas. PSI ¶¶ 116, 157-158.

The PSI calculates McGarrity's total offense level at 31. PSI ¶ 132. McGarrity objects to this calculation on two grounds. First, he objects to the determination in the PSI that a two-level increase in offense level is warranted under U.S.S.G. § 3C1.1 for obstruction of justice. The obstruction enhancement does not apply where he never missed any court appearance and his conduct in leaving Minnesota did not at all impede the investigation, prosecution or sentencing on the instant offense of conviction. Second, he contends that a three-level decrease in offense level is warranted for acceptance of responsibility under U.S.S.G. § 3E1.1 as he timely and completely accepted responsibility for his conduct in the offense and did not engage in any conduct inconsistent with acceptance. McGarrity therefore contends that, consistent with his plea agreement, the total offense level should be 26.

Additionally, while he does not dispute the accuracy of his criminal history score or that he is in criminal history category IV, he contends that a downward departure to criminal history category II is warranted under U.S.S.G. § 4A1.3 as a criminal history category of IV substantially overstates the seriousness of McGarrity's criminal history or the likelihood he will commit further crimes.

Finally, McGarrity asks that the Court grant his motion for a downward variance from the applicable range under the Sentencing Guidelines and sentence him to the time he has served in detention since his arrest August 17, 2021; over 21 months. Such a variance is warranted for two reasons. First, considering the factors of 18 U.S.C. § 3553(a), in particular McGarrity's personal history and characteristics, sentencing him to time served will be sufficient to accomplish the goals of sentencing. Second, recently proposed amendments to U.S.S.G. § 4A1.1 would eliminate the two-point increase he presently receives for being under criminal justice supervision at the time of the offense. PSI ¶ 143. This change would reduce his total criminal history score to 6 and place him in criminal history category III.

## SPECIFIC OBJECTIONS TO PRESENTENCE REPORT

Defendant maintains the following objections and proposed amendments to the Final Presentence Report (Doc. No. 1581):

¶ 117.     Defendant objects to this paragraph as he neither willfully failed to appear as ordered at a judicial proceeding nor provided a materially false statement to law enforcement. The enhancement of U.S.S.G. § 3C1.1 does not apply.

¶ 121.     Defendant objects to this paragraph as he has clearly demonstrated acceptance of responsibility and not engaged in any conduct that is inconsistent with acceptance. Further, he timely notified the

government of his intention to enter a plea of guilty and did timely enter a guilty plea which permitted the government to avoid preparing for trial and allocate its resources efficiently. Defendant contends he is therefore entitled to a two-level reduction in his offense level under § 3E1.1(a) and one additional level reduction under § 3E1.1(b).

¶ 128.    On the foregoing basis, Defendant objects to the application of the adjustment for obstruction of justice under § 3C1.1.

¶ 131.    On the foregoing basis, Defendant objects to the denial of the application of the adjustment for acceptance of responsibility under § 3E1.1 (a) and (b).

¶ 132.    Given the above objections, defendant contends the total offense level should be 26.

¶ 155.    McGarrity objects to this paragraph as the cell phone left behind at this residence was his ex-wife's, not his.

¶ 156.    Defendant objects to this paragraph in so far as it characterizes the note for his children as a "suicide note." As discussed above, Mr. McGarrity was overcome with grief and anxiety when his ex-wife took his children from him without any notice. The note was written in the midst of a mental health breakdown fueled by his relapse into alcoholism. It absolutely was not meant as a "suicide note" to mislead anyone.

¶ 190.     Based upon the foregoing objections, Mr. McGarrity would amend this paragraph to reflect that based upon a total offense level of 26 and a criminal history category of IV, the guideline imprisonment range is 92-115 months.

## ARGUMENT

### I.  Sentencing Considerations Generally

In *Gall v. United States,* 552 U.S. 38, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007), the United States Supreme Court clarified the two-step process to be followed in federal sentencing.  The first step is to determine the proper Guidelines' range for the defendant's sentence. *Gall,* 552 U.S. at 49, 128 S.Ct. at 596.  In the second step, the court should consider the factors in 18 U.S.C. §3553(a) and determine whether a departure or a variance is appropriate. *Gall,* 552 U.S. at 49-50, 128 S.Ct. at 596-97; *United States v. Roberson,* 517 F. 3d 990, 993 (8th Cir. 2008).

The presentence investigation report is not, itself, evidence. *United States v. Byas*, 581 F.3d 723, 725 (8th Cir. 2009); *United States v. Jenners,* 473 F.3d 894, 897 (8th Cir.2007). When a defendant objects to facts within a presentence investigation report, "the government must present evidence at sentencing as to any disputed fact upon which it has the burden of proof." *Byas,* 581 F.3d at 725. "The district court may only rely on facts established

by a preponderance of the evidence." Id. (citing *United States v. Poor Bear,* 359 F.3d 1038, 1041 (8th Cir.2004)).

The correct calculation of a sentence under the guidelines is a starting point. *Gall,* 552 U.S. at 49, 128 S.Ct. at 596. The overarching consideration under the Sentencing Reform Act is that the sentencing court "'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals of sentencing." *Kimbrough v. United States,* 552 U.S. 85, 101, 128 S.Ct. 558, 570 (2007). As the United States Supreme Court recognized, "(i)t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Koon v. United States,* 518 U.S. 81, 113, 116 S.Ct. 2035, 2053 (1996). Indeed, the district courts have an "institutional advantage" in making sentencing decisions as "they see so many more Guidelines cases than appellate courts do." *Koon*, 518 U.S. at 98, 116 S. Ct. at 2047.

18 U.S.C. §3661 governs the use of information for sentencing. This statute provides that "(n)o limitations shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661. By enacting this statute,

"Congress codified the 'long standing principle that sentencing courts have broad discretion to consider various kinds of information." *Pepper v. United States,* 562 U.S. 476, 488, 131 S.Ct. 1224, 179 L.Ed.2d 166 (2011); *United States Watts,* 519 U.S. 148, 151, 117 S.Ct. 663, 136 L.Ed.2d 554 (1997). The United States Supreme Court has emphasized that possession of the fullest information possible concerning a defendant's life and characteristics is "highly relevant—if not essential—to the selection of an appropriate sentence." *Pepper,* 562 U.S. at 488; citing *Williams v. New York,* 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). "Permitting sentencing courts to consider the widest possible breadth of information about a defendant 'ensures that the punishment will suit not merely the offense but the individual defendant.'" *Pepper,* 562 U.S. at 488; citing *Wasman v. United States,* 468 U.S. 559, 564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

The traditional discretion of sentencing courts to conduct a broad inquiry that includes largely unlimited information continued after passage of the Sentencing Reform Act of 1984 and the enactment of the United States Sentencing Guidelines scheme. *Pepper,* 562 U.S. at 488-489. Under the Supreme Court's existing sentencing framework, while the Guidelines are the starting point for sentencing and an initial benchmark, "district courts may impose sentences within statutory limits based on appropriate consideration of

all of the factors listed in §3553(a), subject to appellate review for 'reasonableness.'" *Pepper,* 562 U.S. at 490; citing *Gall*, 552 U.S. at 49-51.

*II. The Guidelines Calculation.*

    A.  <u>An enhancement for obstruction of justice under § 3C1.1 is not warranted where the defendant's temporarily leaving the jurisdiction in a time of crisis driven by a family emergency did not at all obstruct or impede the administration of justice and does not rise to the level of conduct warranting application of the enhancement.</u>

U.S.S.G.§ 3C1.1 provides for a two level increase in offense level for obstruction of justice in the following circumstances:

> If (1) the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense of conviction, and (2) the obstructive conduct related to (A) the defendant's offense of conviction and any relevant conduct; or (B) a closely related offense, increase the offense level by 2 levels.

U.S.S.G. § 3C1.1.

What constitutes obstructive conduct "can vary widely in nature, degree of planning, and seriousness." U.S.S.G. § 3C1.1, Commentary, Application Note 3. The Commentary to this guideline provision gives examples of conduct that does and does not rise to the level of obstruction. The former includes:

> (A) threatening, intimidating, or otherwise unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so;

(B) committing, suborning, or attempting to suborn perjury, including during the course of a civil proceeding if such perjury pertains to conduct that forms the basis of the offense of conviction;

(C) producing or attempting to produce a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

(D) destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding (e.g., shredding a document or destroying ledgers upon learning that an official investigation has commenced or is about to commence), or attempting to do so; however, if such conduct occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it results in a material hindrance to the official investigation or prosecution of the instant offense or the sentencing of the offender;

(E) escaping or attempting to escape from custody before trial or sentencing; or willfully failing to appear, as ordered, for a judicial proceeding;

(F) providing materially false information to a judge or magistrate judge;

(G) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

(H) providing materially false information to a probation officer in respect to a presentence or other investigation for the court;

(I) other conduct prohibited by obstruction of justice provisions under Title 18, United States Code (e.g., 18 U.S.C. §§ 1510, 1511);

(J) failing to comply with a restraining order or injunction issued pursuant to 21 U.S.C. § 853(e) or with an order to repatriate property issued pursuant to 21 U.S.C. § 853(p);

(K) threatening the victim of the offense in an attempt to prevent the victim from reporting the conduct constituting the offense of conviction.

This adjustment also applies to any other obstructive conduct in respect to the official investigation, prosecution, or sentencing of the instant offense where there is a separate count of conviction for such conduct.

U.S.S.G. § 3C1.1, Commentary, Application Note 4. Examples of conduct not covered by this guideline provision include:

> (A) providing a false name or identification document at arrest, except where such conduct actually resulted in a significant hindrance to the investigation or prosecution of the instant offense;
> (B) making false statements, not under oath, to law enforcement officers, unless Application Note 4(G) above applies;
> (C) providing incomplete or misleading information, not amounting to a material falsehood, in respect to a presentence investigation;
> (D) avoiding or fleeing from arrest (see, however, § 3C1.2 (Reckless Endangerment During Flight));
> (E) lying to a probation or pretrial services officer about defendant's drug use while on pre-trial release, although such conduct may be a factor in determining whether to reduce the defendant's sentence under § 3E1.1 (Acceptance of Responsibility).

U.S.S.G. § 3C1.1, Commentary, Application Note 5.

The conduct at issue does not rise to the level of any of the examples of conduct that constitutes obstruction set forth in Application Note 4. Indeed, the conduct falls short of that set forth in Application Note 5, conduct for which the Guidelines specify the enhancement should not apply.

Mr. McGarrity does not dispute that he left the District of Minnesota and for a period of approximately seven months failed to keep in touch with United States Probation and Pre-trial Services. He does dispute that he attempted to mislead anyone about either his departure from the district, his mental health crisis, or his whereabouts. More particularly, he never provided a materially false statement or materially false information to law enforcement or his probation officer. Also, he never escaped or attempted to

escape from custody or willfully failed to appear –indeed failed to appear at all– for any judicial proceeding. In fact, Mr. McGarrity's leaving Minnesota did not obstruct, impede, or even substantially delay the administration of justice. As the Court knows, many of Mr. McGarrity's co-defendant's cases remain unresolved and many others are still pending sentencing, as is Mr. McGarrity. This case is scheduled for sentencing on June 29, 2023; in the same broad time frame that other co-defendants have appeared for sentencing.

There is no allegation that Mr. McGarrity committed any other crime during the time when he was outside of Minnesota. There is no allegation he used a false name nor provided incomplete or misleading information during the presentence investigation process or to any law enforcement official. While he was embarrassed and profoundly disappointed in himself when he began drinking again, he never lied about it.

In mid-January, 2021, defendant's ex-wife left him without notice taking their two children with her. Mr. McGarrity initially believed his wife had just stepped out for a short while as she left her cell phone behind. This is the cell phone that was later found in McGarrity's home. It soon became apparent that McGarrity's ex-wife and children were not returning to their then shared residence . This caused McGarrity to become despondent and overcome with anxiety and sadness. McGarrity relapsed and began drinking alcohol again

after months of sobriety. Thinking he might never see his children again and in the midst of a mental health crisis, Mr. McGarrity wrote a long letter to his children. This letter was absolutely not a "suicide note," but a heartfelt expression of what Mr. McGarrity was thinking at the time.

Once McGarrity started drinking alcohol again his life quickly fell apart. He effectively had a mental breakdown and stopped contacting Pretrial Services and his supervising agent. He left the State of Minnesota. However, he did not leave either his wallet or cell phone behind. As noted, the cell phone was his ex-wife's which she left behind. The wallet was an old one. The note referenced was not meant to be left behind or read by anyone.

Mr. McGarrity went to Mexico after he learned that his ex-wife took his children to a compound near Puerto Vallarta. There, he worked to get his ex-wife and children to return to the United States while at the same time getting into an alcohol abuse program to get the help he desperately needed. Once he learned his family had returned to the United States and after he completed the treatment program, he made arrangements to turn himself in to federal agents at the United States-Mexico border. This happened on August 17, 2021.

In sum, while Mr. McGarrity left the District of Minnesota and stopped contacting Pretrial Services, he voluntarily surrendered after seven months. This conduct, particularly considering the circumstances as to why McGarrity

left, simply does not rise to the level of obstruction of justice under §3C1.1. Cf. *United States v. Barraza,* 2022 WL 2288331, at * 1 (8th Cir. 2022) (while on pretrial supervision, defendant fled to Mexico, failed to appear for sentencing, and did not surrender until two years later); *United States v. Chavez,* 833 F.3d 887, 889 (8th Cir. 2016) (obstruction enhancement applied where defendant "jumped bond and then lived abroad and in another state for nearly nine years"); *United States v. Tinajero,* 469 F.3d 722, 725-26 (8th Cir. 2006) (obstruction enhancement applied where defendant fled to Mexico while on pretrial release, failed to appear for judicial proceeding, and remained a fugitive for more than a year).

B. <u>Mr. McGarrity accepted responsibility for his conduct in a timely fashion and never engaged in conduct inconsistent with acceptance warranting a three-level reduction in offense level under U.S.S.G. §3E1.1(a) and (b).</u>

U.S.S.G. §3E1.1(a) provides for a two-level reduction in offense level "(i)f the defendant clearly demonstrates acceptance of responsibility for his offense." A further one-level reduction is warranted when "…the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level **16** or greater, and upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying

authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently...." §3E1.1(b).

The Commentary to this guideline section includes among those factors to consider in determining whether defendant qualifies for a reduction in offense level for acceptance of responsibility:

> (A) truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under §1B1.3 (Relevant Conduct).

U.S.S.G. §3E1.1, Commentary, Application Note 1(A).

A timely guilty plea and admission of relevant conduct are "significant evidence of acceptance of responsibility," though such evidence may be outweighed by conduct inconsistent with acceptance. *United States v. Wineman*, 625 F.3d 536, 538-539 (8th Cir. 2010). The ultimate issue in determining whether a defendant is entitled to a reduction for acceptance of responsibility "is whether the defendant recognizes and takes affirmative responsibility for his conduct and shows remorse for it." *United States v. Rivera-Mendoza,* 682 F.3d 730, 734 (8th Cir. 2012). The defendant bears the burden of establishing entitlement to a reduction for acceptance of responsibility. *United States v. Ayala,* 610 F.3d 1035, 1036 (8th Cir. 2010).

Committing further criminal offenses while on bond is conduct inconsistent with acceptance of responsibility. *United States v. Nguyen*, 52 F.3rd 192, 194 (8th Cir. 1995). Similarly, placing blame on others and portraying criminal conduct as a public "service" in social media rants is conduct that is inconsistent with acceptance. *Wineman*, 625 F.3d at 539. Withholding information from a probation officer which is necessary to complete a presentence investigation report, refusing to discuss involvement in an offense, and stating that a plea agreement was only signed under protest without reading it have also been found to be conduct inconsistent with acceptance. *United States v. Miller*, 951 F.2d 164, 165 (8th Cir. 1991). Falsely denying or frivolously contesting relevant conduct that the court determines to be true is also conduct that is inconstant with acceptance. *United States v. Reyna Rodriguez,* 810 Fed.Appx. 470, 474-475 (8th Cir. 2020). See also *United States v. Bennett*, 989 F.2d 505 (8th Cir. 1993) (using drugs while on conditional release in violation of conditions and failing to disclose complete criminal record to probation officer inconsistence with acceptance). *United States v. Torres-Rivas*, 825 F.3d 483, 487 (8th Cir. 2016) (sending threatening letters to cooperating co-defendants and raising multiple frivolous objections to relevant conduct inconsistent with acceptance).

Mr. McGarrity has never wavered from his truthfully admitting the conduct comprising the offense. He has never falsely denied any relevant conduct. Mr. McGarrity has not committed any further crimes while on conditional release. He has also not raised any frivolous objections to any factual portions of the presentence investigation report. He has never attacked the victims or in any way asserted that his conduct was not criminal and wrong. Mr. McGarrity twice met with law enforcement and answered all their questions about his involvement in the offense truthfully. In short, he has always accepted responsibility and never said or did anything that is inconsistent with that. He has met the criteria for a two-level reduction under §3E1.1(a).

The only criteria to warrant the further reduction under §3E1.1(b) is the timeliness of defendant's notification of intention to plead guilty. As the Seventh Circuit has observed:

> Under the guideline, therefore, the defendant must be given a two-level decrease under subsection (a) when he clearly accepts responsibility for his offense. After he qualifies for subsection (a), he must also be given an additional 1-level decrease under subsection (b) when its criteria are met (1) the defendant's offense level is 16 or greater before the subsection (a) 2- level reduction is considered and (2) he assists authorities by either timely providing information to the prosecution about his involvement in the offense or timely notifying authorities of his intention to plead guilty.

*United States v. Townsend*, 73 F.3d 747, 755 (7th Cir. 1996). Defendant recognizes that the earlier version of §3E1.1(b) did not include language

requiring a motion of the government. However, defendant contends that because his plea was timely and he meets the criteria for a reduction under §3E1.1(a), it is irrational, and thus, unconstitutional, for the government to now not move for a further one-point reduction under §3E1.1(b).

The "failure to file a §3E1.1(b) motion must be rationally related to a legitimate governmental end." *United States v. Jordan*, 877 F.3d 391, 394 (8th Cir. 2017) (citations omitted). The court may order the government to file the motion where the government's motive for not filing it is deemed unconstitutional. Id. The "government should not withhold such a motion based on interests not identified in §3E1.1." Id at 395, citing U.S.S.G. §3E1.1 cmt.n.6. As Judge Kelly recently noted:

> The government is free to refuse a third-level reduction motion pursuant to any interest contained in §3E1.1, but as acceptance of responsibility under §3E1.1(a) is an absolute prerequisite to eligibility for a third-level reduction, the government's interest in acceptance of responsibility has already been satisfied by the time the third-level reduction comes into the picture. Nothing in the plain language of subsection (b) suggests consideration of the degree to which a defendant has accepted responsibility for the offense of conviction or some other relevant conduct.

*Jordan*, 977 F.3d at 397 (Kelly, J. Concurring).

It should be undisputed that McGarrity timely notified the Government of his intention to plead guilty thereby permitting the government to avoid preparing for trial and allowing the government and the Court to allocate their resources efficiently. He pleaded guilty within less than a month of his

arraignment. In these circumstances, failure to move for a third point reduction under §3E1.1(b) would be irrational and unconstitutional. Should the Government not move for a third point reduction, the Court should order that they do so.

III.    *A downward departure is warranted under U.S.S.G. § 4A1.3 (b)(1) where the applicable criminal history category of IV substantially over-represents the seriousness of McGarrity's criminal history or the likelihood that he will commit other crimes.*

Applying the version of the U.S.S.G. presently in effect, the PSI correctly calculates that Mr. McGarrity has 8 criminal history points putting him in criminal History Category IV. PSI ¶ 144. The basis for this computation is as follows:

- 2004 conviction for third degree criminal sexual conduct. McGarrity initially sentenced to 10 years' probation. Probation ultimately revoked and sentence of 48 months' imprisonment executed after McGarrity used alcohol and marijuana. PSI ¶ 136: 3 points

- 2009 conviction for misdemeanor driving while intoxicated. Probationary sentence imposed. PSI ¶ 137: 1 point.

- 2014 conviction for failure to register as a predatory offender. (McGarrity failed to update his address). Probationary sentence imposed. PSI § 138: 1 point.

- 2017 conviction for contributing to the need for child protective services. Probationary sentence imposed. PSI ¶ 141: 1 point.

- McGarrity was under court supervision for the above offenses during the period when the instant offense was committed (from at least 2016 through 2020; PSI ¶ 1). 2 additional points were therefore imposed under U.S.S.G. § 4A1.1(d).

U.S.S.G. § 4A1.3(b) (1) allows for a downward departure from the otherwise applicable range under the advisory Guidelines in the following circumstances:

> **(1)** Standard for Downward Departure.--If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

U.S.S.G. § 4A1.3 (b)(1). *See also United States v. Bradford,* 500 F.3d 808 (8th Cir.2007); *United States v. Payne,* 81 F.3d 759 (8th Cir.1996).

Alcohol and drug abuse underlie most of Mr. McGarrity's criminal history. He was intoxicated at the time of the incident giving rise to his conviction for criminal sexual conduct. PSI ¶ 136. While his initial sentence for this offense would have given him 2 criminal history points had he successfully completed

probation, the violation that resulted in execution of his 48 month sentence, resulting in 3 criminal history points, stemmed from alcohol and drug use. Id. His DWI conviction clearly is alcohol abuse related.

While not at all minimizing Mr. McGarrity's criminal history, none of his convictions were so serious that an executed sentence of imprisonment was initially imposed. None of his convictions involve any weapons or threats or acts of violence. Looking at Mr. McGarrity's criminal history as a whole, the likelihood that he will commit any further crimes will be reduced by continued sobriety. Because the source of almost all of Mr. McGarrity's criminal history is treatable, putting him in a category of individuals who have had multiple executed long term prison sentences substantially overstates the risk McGarrity will commit further crimes.

For these reasons, defendant asks that the Court depart downward under §4A1.3(b) and consider the advisory guideline range for an offender in Criminal History Category II. Assuming the Court sustains defendant's above objections to the offense level calculation, this would result in an offense level of 26 which at Criminal History Category II yields an advisory Guidelines' imprisonment range of 70-87 months.

*IV.   Additional sentencing considerations of 18 U.S.C. § 3553(a) warrant a downward variance from the Guidelines' range.*

*United States v. Booker,* 534 U.S. 220, 125 S. Ct. 738, 764-66, 160 L.Ed.2d 621 (2005) (Breyer, J.), mandates that sentences be "reasonable" in light of the factors enunciated in 18 U.S.C. §3553(a).   *United States v. Winters*, 416 F.3d 856, 859 (8th Cir. 2005).   These factors include the following:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed-

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for-

    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, and that are in effect on the date the defendant is sentenced; …

(5) any pertinent policy statement issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)(2) that is in effect on the date the defendant is sentenced;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. §3553(a).

As *Booker* made the United States Sentencing Guidelines advisory, the Court has the discretion to apply the sentencing objectives and factors outlined above and impose a sentence not previously authorized under the Guidelines. *United States v. Robinson,* 409 F.3d 979, 981–82 (8thCir. 2005). These factors, in light of the facts and circumstances discussed above, warrant a downward variance to a non-prison sentence.

## A. Nature and circumstances of the offense and the history and characteristics of the defendant.

The base offense level in this case is largely driven by the amount of loss for which Mr. McGarrity is responsible, something over which he had no control. See PSI ¶¶ 108, 123. It is notable that while there is a 16-level offense level increase due to the overall loss amount of $2,673,525 as a result of McGarrity's telemarketing at multiple companies and brief ownership of one company, the agreed upon amount of restitution he must pay is $100,000. PSI ¶ 108. As a telemarketer, Mr. McGarrity simply followed the scripts he was given using the list of names he was told to call.

The other telemarketers were deemed to have mitigating roles. PSI §§ 104-107, 109-113. While Mr. McGarrity recognizes that his ownership of a company briefly involved in the fraud scheme is a differentiating factor from the other telemarketers, most of the loss for which he is responsible, and

most of the increase in his offense level, stems from work he did as a telemarketer.

As discussed above, Mr. McGarrity takes full responsibility for his criminal conduct and is extremely remorseful. As his mother Nancy Birkholz attests in her letter to the Court, he has used his time in detention constructively to reevaluate his life and priorities. He is committed to maintaining his sobriety. He has taken courses while in custody including AA 12 steps, PTSD therapy, cognitive behavioral therapy, dealing with stress, and courses to help himself be a better person on his release.

He continues to be actively involved in his children's lives, as much as he can while in detention. The letter from the mother of his son Kieran, Emily Dornfeld, confirms that Eric talks with his son as much as possible. Ms. Dornfeld knows Eric to be a "very caring person and an even more amazing father." She also notes that Mr. McGarrity's going to Mexico was driven largely by the need to get his other children out of danger.

A sentence that allows Mr. McGarrity to be reunited with his children as soon as possible is critically important. Right now, his two youngest children are in foster care. PSI ¶ 159, see also letter from Michael McGarrity. As the parental rights of the children's mother, Hayley McGarrity, are believed to have been terminated, the children do not have a parent physically present in their lives. Id. The focus of Mr. McGarrity's life right now is being in a

position where he can physically be present for his children and provide them a home with love and support.

## B. The need for the sentence imposed.

Mr. McGarrity has been detained since August 17, 2021. All of that time, over 21 months, has been in facilities meant to house short term detainees, including the Sherburne County jail. While Mr. McGarrity has tried to take advantage of any programming opportunity he could, the options are limited. This time that he has spent in jail has been very restrictive. 21 months detention in these conditions reflects the seriousness of the offense and provides more than adequate deterrence not only to Mr. McGarity but to others.

## C. The need to avoid unwarranted sentence disparities.

Given that the defendant has been detained for over 21 months, Defendant submits that a sentence of time served followed by 2 years of supervised release is consistent with the sentence the Court has given to other telemarketers. (Barbara Moulder, time served; 2 years supervised release; Jeffrey Smoliak, 6 months home detention; 3 years supervised release). Indeed, co-defendant Tara Nichole Creason received a sentence of 12 months and 1 day imprisonment followed by 2 years supervised release though she had an aggravating role as a call-center manager. PSI ¶ 94. A

sentence of 21 months, time served, for Mr. McGarrity followed by 2 years supervised release would avoid unwarranted sentence disparities.

## D.    A downward variance is appropriate to account for expected changes in the Sentencing Guidelines.

The proposed amendments to §4A1.1 of the U.S.S.G. would reduce Mr. McGarrity's criminal history by 2 points as he would no longer be subject to an offense level increase for committing the instant offense while under court supervision. The proposed amendment, which will be effective on November 1, 2023 absent Congressional action, will provide as follows:

**Proposed Amendment:**

**(A)    Status Points under §4A1.1**

---

**§4A1.1.   Criminal History Category**

The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.

(a)   Add **3** points for each prior sentence of imprisonment exceeding one year and one month.

(b)   Add **2** points for each prior sentence of imprisonment of at least sixty days not counted in (a).

(c)   Add **1** point for each prior sentence not counted in (a) or (b), up to a total of **4** points for this subsection.

(d)   ~~Add **2** points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.~~

(~~e~~**d**)   Add **1** point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of **3** points for this subsection.

(e)   Add **1** point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.

**Commentary**

The total criminal history points from §4A1.1 determine the criminal history category (I–VI) in the Sentencing Table in Chapter Five, Part A. The definitions and instructions in §4A1.2 govern the computation of the criminal history points. Therefore, §§4A1.1 and 4A1.2 must be read together. The following notes highlight the interaction of §§4A1.1 and 4A1.2.

See https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf. Mr. McGarrity only has 6 points after § 4A1.1 (a) through (c). Therefore, he would not qualify for even the single status point under the proposed §4A1.1(e). Defendant asks that the Court consider this expected change in the Guidelines as an additional basis for a downward variance.

## CONCLUSION

For the above reasons, Defendant respectfully requests that the Court sentence him to time served followed by two years of supervised release along with restitution in the agreed upon amount and a $100 special assessment.

Respectfully submitted,

DATED: June 13, 2023

GOETZ & ECKLAND P.A.

By: ___*s/Frederick J. Goetz*___

FREDERICK J. GOETZ
Attorney Registration No. 185425
Banks Building
615 1st Avenue NE, Suite 425
Minneapolis, MN 55413
(612) 874-1552

ATTORNEY FOR DEFENDANT