## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA
### Criminal No. 20-232 (JRT/DTS)

UNITED STATES OF AMERICA,

            Plaintiff,

v.

AMONDO ANTOINE MILLER,

            Defendant.

**DEFENDANT'S OPPOSITION TO GOVERNMENT'S MOTION REGARDING ADMISSION OF COCONSPIRATOR STATEMENTS**

The Government's Motion Regarding Admission of Coconspirator Statements (Dkt. No. 1962] should be denied because the Government presents no argument or evidence that Mr. Miller was a member of the same conspiracy as the coconspirators whose statements the Government seeks to admit and has therefore failed to carry its burden under Rule 801(d)(2)(E).

Coconspirator statements are admissible against a defendant if the Government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978). The Government must prove these requirements by a preponderance of the evidence. *See Bourjaily v. United States,* 483 U.S. 171, 175 (1987). A court has the discretion to conditionally admit a challenged statement subject to later proof to satisfy the coconspirator rule and defer a final ruling on admissibility until after hearing the relevant

evidence. *United States v. Coco,* 926 F.2d 759, 761 (8th Cir.1991). A court also has the discretion to consider the content of the proffered coconspirator statements in deciding whether a particular conspiracy has been established. *Bourjaily v. United States*, 483 U.S. 171, 181 (1987). But, as the Eighth Circuit explained in *United States v. Roach*, such a statement "cannot provide the sole evidentiary support for its own admissibility." 164 F.3d 403, 409 (1998); *Bourjaily*, 483 U.S. at 183 (It is generally agreed that "an otherwise inadmissible hearsay statement cannot provide the sole evidentiary support for its own admissibility.").

The first statement identified by the Government regarding Mr. Miller appears on page 3 of the Government's brief. Here, the Government's focus is on Mr. Aragon, but the Government mentions Mr. Miller based on James Sierra's testimony that Mr. Miller once worked for Henry Aragon. (Gov. Mot. at 3.) But Mr. Sierra's statement lacks any reference to any time frame. On cross examination, Mr. Sierra admitted that Mr. Miller was not working for any of Aragon's Colorado companies during the time of the Colorado Attorney General investigation, which he said occurred in 2011 or 2012. Trial Tr. Vol. VII at 1456-57. Accordingly, even if the Government could rely on the statement itself to support its own admissibility, which it cannot under *Roach*, Mr. Sierra's statement fails to demonstrate that Mr. Miller knew of and agreed to join any conspiracy or was part of any conspiracy at the time the statement was made, or how this statement furthers any conspiracy. The Government also highlights the fact that Mr. Sierra testified that Mr. Aragon sent him to pick up leads from Mr. Miller. (Gov. Mot. at 3.) Again, this statement alone does not

demonstrate that Mr. Miller knew of and agreed to join any conspiracy at the time the statement was made. In fact, on cross examination, Mr. Sierra admitted that he never shared with Mr. Miller what the leads he picked up were used for, how Mr. Aragon ran his business, what scripts were used by Mr. Aragon to make sales to customers, or anything else. Trial Tr. Vol. VII at 1454-57. Accordingly, the Government has failed to meet its burden of proof that Mr. Miller knew of or joined any conspiracy when the statements were made.

Mr. Miller's name is identified for a second time on page 3 of the Government's brief in passing, where the focus is on Sue Kemp as a nontestifying coconspirator. The Government asserts that Macario Aguilar and Brittany Wilson went to Sue Kemp, who "worked at Amondo Miller's company," with their concerns regarding chargebacks and cancellations. (Gov. Mot. at 3.) Leaving aside the fact that the Government has not carried its burden that Magazine Solutions was owned by Amondo Miller, this reference to Mr. Miller has nothing to do with demonstrating that Mr. Miller knew of or agreed to join any conspiracy.

Mr. Miller is identified for a third time on page 7 of the Government's brief, where James Sierra says that Mr. Aragon told him that he and Mr. Miller are friends. (Gov. Mot. at 7.) How or why this statement demonstrates that Mr. Miller knew of or agreed to join any conspiracy at the time of the statement is left unsaid. The Government is equally silent as to how this statement furthers any conspiracy.

Finally, Mr. Miller is identified for a fourth time on page 7 of the Government's

3

brief, where Jared Michelizzi testified, in essence, that he got Mr. Miller's contact information from Brian Williams, who in turn got it from Wayne Dahl. (Gov. Mot. at 7.) Even if Mr. Williams and Mr. Michelizzi made these statements in furtherance of a conspiracy, it does not mean that Mr. Miller knew of or agreed to join any conspiracy at the time the statements were made.

For all the reasons set forth above, the statements referencing Mr. Miller by others do not show that Mr. Miller was aware of or agreed to join any conspiracy, or even knew the people making the statements or that things were being said about him. Further, the Government fails to demonstrate that at the time the statements were made, Mr. Miller knew of and had agreed to join the conspiracy. Therefore, the Motion should be denied.

Dated:  October 29, 2023          **SAPIENTIA LAW GROUP, PLLC**

s/Robin M. Wolpert
Robin M. Wolpert (#0310219)
120 South Sixth Street, Suite 100
Minneapolis, MN 55402
Phone: 612-756-7100
Fax: 612-756-7101
robinw@sapientialaw.com

*Attorney for Defendant*
*Amondo Antoine Miller*