UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
CRIM. NO. 20-CR-232 (JRT/DTS)

_____

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | **(REDACTED) DEFENDANT PRINCE'S POSITION REGARDING SENTENCING** |
| v. | |
| JESSICA MARIE PRINCE (29), | |
| Defendant. | |

_____

## Introduction

Jessica Prince comes before this Court as a remarkable person with an unremarkable role in the fraud scheme. In this 43- defendant telemarketing fraud indictment, Ms. Prince was a call center manager. She worked for a Missouri-based company, "Readers Club of America," where she trained and supervised telemarketers. She was paid modestly: from 2017-2020, she and her husband combined made less than six figures.

Despite these facts, because of an engorged loss amount and guidelines enhancements that—while technically accurately computed—do not adequately capture the reality of Ms. Prince's situation, she faces a massive sentencing guideline range. This guideline range is disconnected from the realities of this case, and Counsel for Ms. Prince submit this memorandum in support of a request for a probationary sentence.

## Ms. Prince's painful early life and resilient adulthood

Most strikingly, Ms. Prince's nature is not captured in these guidelines. She is the rare person who, despite facing hurdles no young person should ever have to face, grew to be a stable, resilient, and responsible person.

███████████████████████████████████████
███████████████████████████████████████
█████████████████████████████████
█████████████████████████████████████
███████████████████████████████████
████████████████████████████████████
███████████████████████████████████
███████████████████████████████████
███████████████████████████████████
████████████████████████████████████
████████████████████████████████████
███████████
    █████████████████████████████████
███████████████████████████████████
████████████████████████████████████
█████████████████████████████████████
██████████

These are the kinds of circumstances under which very few people live good lives. But Ms. Prince defied the odds. She has made the difficult choices and put in the difficult work needed to overcome this terrible start.

The highlight of her adult life is her family. Family life in her childhood was a source of tumult, fear, and pain. Now it is a place of nurturing, love, and stability. Almost 20 years ago she met her now-husband, Michael. They have a strong, loving marriage.

They have a blended family. Michael is a great step-father to Dillon, who, now 22-years-old, works for BNSF Railway as a Conductor. Likewise, Michael had a daughter from a previous relationship (Haleigh). Ms. Prince is close with Haleigh and is a great step-mother to her. These step-parent relationships are especially meaningful to Ms. Prince given the way she was treated by her step-parents as a young woman. And Ms. Prince and Michael have a biological son, Brandon, who is a well-adjusted 17-year-old young man who goes to school, lives at home, and works part-time.

In the last few years, Ms. Prince has thought a great amount about this case and her role in it. Having this case hanging over her head for years has been extremely stressful. For some time, it sparked old demons and she struggled emotionally against that depression. But she has fought hard and consciously worked to change her path.

She found employment that was—starkly—the opposite of her time at Readers Club. From May 2021 through October 2022, she worked as a residential counselor at a group home for troubled adolescent women, the Girls' Ranch. Sadly, the Girls' Ranch closed due to running out of funding, having to relocate, and not being able to find a suitable location. Ms. Prince is hoping they may re-open—and has thought about taking a

counselor position at a nearby Boys' Ranch with the same owners—but as of now she sadly is no longer working there.

Nevertheless, she has made an indelible impact on the girls' lives there. While the girls have gone home, she remains close with many—she calls and video chats weekly with a handful of them and they let her know how they are doing (the good and the bad). It is not surprising they trust her. She, having faced some terrible challenges and yet emerged as the person she is today, can show them that there is a way out. Years ago, she was young, did not feel safe at home, and found solace in a care facility. She is uniquely able to help these young women.

She had made, and is continuing to make, a real difference in these young women's lives. The reward for this was not financial. While there, Ms. Prince was paid $15 an hour (at her new position, a secretary at a real estate office, she instead makes $20 an hour). In her employment, as in her life, Ms. Prince is not motivated by money but by a desire to do the right thing. This fact sets her apart from too many.

Indeed, she and her family live a typical middle-American life. They live in a 960-square-foot home in Missouri, valued at just under $100,000. Her husband works two normal jobs. They share a vehicle and have credit cards, loan payments, and a bit of medical debt. While they have enough money to put food on the table, they aren't wealthy.

This financial situation makes Ms. Prince's attitude towards her restitution obligation more remarkable. Federal Courts routinely see offenders with significant assets and six-figure incomes make no real effort to repay restitution, especially before

sentencing. While paying $100,000.00 seemed insurmountable to her; Ms. Prince set herself apart here too. For the past two years, every two weeks, she set a bit of money aside from her paychecks toward restitution. She saved a couple thousand dollars when she was making $15 an hour and, when she got new position paying $20 an hour, ramped up the money she was setting aside. She anticipates having $3,100.00 at sentencing to make a start on her restitution. No one would have blamed her had she decided she simply didn't have the means to set money aside to this point. That she has gone above and beyond to do so shows her extraordinary acceptance of responsibility.

[redacted]

Finally, Ms. Prince's striking change of heart is shown not just by the facts of the case as they exist on paper but by her demeanor. Her positive personal factors are impossible to ignore. When she speaks, her remorse, her thoughtfulness, and her commitment to doing good jump off the table.

The defense respectfully submits that given these factors, as well as the legal and factual analysis necessary under 18 U.S.C. § 3553(a), sentencing Ms. Prince to *any* time in prison (let alone the sentence suggested by the guidelines) would not serve any

5

legitimate sentencing interests. Accordingly, the defense submits this sentencing memorandum in support of a request for a probationary sentence.

## Legal Posture on Sentencing

The law on sentencing is well-settled. *United States v. Rivera*, 439 F.3d 446, 447 (8th Cir. 2006); *United States v. Haack*, 403 F.3d 997, 1002-03 (8th Cir. 2005). At sentencing, the Court is to first rule on any material, unresolved factual and legal disputes. FED. R. CRIM. P. 32(i)(3)(B). The Court is then to determine the statutory minimum and maximum sentences, calculate the advisory guidelines range, and determine whether any departures or variances from that range are appropriate.

While the guidelines "provide a starting point or 'anchor' for judges," *United States v. Kladek*, 651 F. Supp. 2d 992 (D. Minn. 2009) (quoting *United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008)), the Court's ultimate task is to craft a sentence "sufficient but not greater than necessary" to achieve the statutory sentencing aims articulated in 18 U.S.C. § 3553(a). Put another way, the Court is to impose the least severe sentence that will achieve the statutory goals.

Here, there are no unresolved factual objections to the PSR. The parties agree on all relevant facts.

The sole unresolved legal issue is the applicable aggravating role adjustment. The defense and the government agreed in the plea agreement a 2-level adjustment is appropriate, while the PSR believes a 3-level adjustment is appropriate. The defense stands behind the plea agreement and submits the Court should accept it. If the Court agrees with the defense and government and applies a 2-level adjustment, the guideline

range is 97-121 months imprisonment. If the Court agrees with the PSR, the guideline range is 108-135 months imprisonment.

As to departures and/or variances from those range, there are multiple potential bases. As the PSR indicates, the defense believes a downward departure is appropriate first under U.S.S.G. § 5H1.3 ("Mental and Emotional Conditions") due to her depression presenting since an extraordinarily difficult childhood; second under U.S.S.G. § 2B1.1 cmt. 21(C) as the over four-million-dollar loss amount substantially overstates the seriousness of the offense and of this defendant's criminal conduct. The defense submits this is true for multiple reasons, including that this is, as the guidelines contemplate, a case with a "'substantial but diffuse' aggregate loss amount, where 'relatively small loss amounts suffered by a relatively large number of victims…may combine to produce an offense level that substantially overstates the seriousness of the offense.'" (*Id*);[1] and third under U.S.S.G. § 5K2.0(a)(3), that in multiple ways this is an exceptional case the guidelines do not adequately consider.

Further, the defense notes that, while there is a new guidelines provision supplying a 2-level reduction in sentencing guideline ranges for some zero-criminal-history-point offenders, U.S.S.G. § 4C1.1, the guidelines disqualify Ms. Prince as, even though she has zero criminal history, she received an aggravating role adjustment. The defense does submit, however, that this Court should consider Ms. Prince's absolute lack of criminal

---

[1] The defense further submits this may be appropriate given Ms. Prince's attenuated link to the large loss amount, and a more guiding figure may be the $100,000.00 restitution order deemed appropriate.

history—no juvenile or adult history of any kind—as the basis for a variance. The guidelines' calculus groups her in Category I together with people who do have some history of misconduct. Notably, some analysts have credited the Commission's decision to separate zero-point offenders as "people assessed zero criminal history points have far lower rates of recidivism than even people with a single criminal history point"[2] but criticized the Commission's decision to *exclude* people with the listed aggravating factors, as noting "the exclusion of people with "aggravating factors" (particularly any case involve the use or threat of violence) from the Zero-Point Amendment—are not supported by data and seem to be rooted in a desire for retribution or punishment for the sake of punishment."[3]

Ms. Prince's entire lack of criminal history is thus only partly taken into account by the guidelines. It is appropriate for the Court to take this into account under variance conditions. Indeed, her long history of good behavior is especially notable given her upbringing. It would have been understandable had she had prior misconduct; the fact that she has none speaks very highly of her.

## Other Sentencing Considerations

The defense recognizes that probationary sentences in significant fraud cases are not the norm. But Ms. Prince respectfully contends careful consideration of the offense,

---

[2] *Federal Sentencing Commission Advances Meaningful Criminal Justice Reforms*, FWD.US, Nov. 1, 2023 (available at https://www.fwd.us/news/federal-sentencing-commission-advances-meaningful-criminal-justice-reforms/)
[3] *Id*.

her life, and the 18 U.S.C. § 3553(a) factors show this is precisely the type of case in which it is warranted.

While the sentence imposed needs to reflect the seriousness of the offense, "promote respect for the law" and "provide just punishment", the defense submits a probationary sentence would achieve those goals given: (1) Ms. Prince's longstanding positive personal history summarized above, (2) Ms. Prince's relatively lesser profit during the offense, (3) Ms. Prince's extraordinary efforts—successful efforts—at personal rehabilitation, and (4) her positive legal adjustment, compliance with the Court, and cooperation.

Given these circumstances, the deterrence provided by imprisonment is low, and the need to protect the public nonexistent. Likewise, a probationary sentence would not create any unwarranted sentencing disparities. Sentences in fraud cases are highly dependent upon the specific facts of the offense and the offender, and a probationary sentence would not be out of line with other similarly situated co-defendants in the related cases nor in unrelated fraud cases in this district or elsewhere. If this Court were to sentence Ms. Prince to probation it would not be perceived as being an aberrant sentence—rather, a guidelines sentence would create an unfair disparity by being far too punitive.

Finally, Ms. Prince has already made the vocational and mental/emotional health changes that were appropriate for her to make. Rather than work at a fraudulent telemarketing company, she found a calling where she is making a difference for troubled young women. She did this not for money or any ulterior motive but just simply because

it was the right thing to do. When that facility shut down, she found other suitable employment with a hope and plan to someday, hopefully soon, return to her calling.

This was part of a long pattern of doing the right thing and making changes when she has needed to (the sole exception is her employment at Readers Club—this case). If something else comes up in the future, and she needs to make further changes, she has the tools, knowledge, and support to make those changes and continue to act appropriately. Incarceration is not necessary to provide any treatment. It would only set her, and the community, back.

The consequences imposed, along with the seriousness with which this case was treated, along with a felony conviction, are well "sufficient" to achieve the statutory and equitable sentencing goals. A term of imprisonment is not needed. It would leave a scar on the world where there should be healing.

For the foregoing reasons, the defense submits the only just and equitable sentence is a sentence of probation subject to whatever conditions the Court deems appropriate.

Sincerely,

Dated:   Nov. 10, 2023            /s/ Andrew S. Birrell

Andrew S. Birrell (Attorney No. 133760)
Ian S. Birrell (Attorney No. 0396379)
Birrell Law Firm PLLC
333 South 7th Street, Suite 2350
Minneapolis, MN 55402
Phone: (612) 238-1939
andy@birrell.law | ian@birrell.law
*Attorneys for Defendant*