UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-232(29) (JRT/DTS)

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESSICA MARIE PRINCE,

    Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

For the following reasons, the United States recommends that Defendant Jessica Marie Prince receive a sentence of one year and a day imprisonment. The United States believes that such a sentence, which is a downward variance below the low end of the applicable Guidelines range, is sufficient, but not greater than necessary, to comport with the Section 3553(a)(2) sentencing factors.

## I. Relevant Facts

### A. Offense Conduct

On October 20, 2020, Prince was charged in a 53-count indictment with conspiracy to commit mail fraud and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1349. Prince entered a guilty plea pursuant to a plea agreement on November 6, 2020, just weeks after the indictment came down. The circumstances of the offense are set forth in the Presentence Investigation Report (the "PSR," ECF No. 727).

Prince participated in a large, nationwide telemarketing fraud scheme involving magazine subscription sales. Between 2014 and 2020, Prince worked as a a

manager for Readers Club of America ("RCA"), a Missouri-based company involved in fraudulent magazine sales. RCA ran a call center in Thayer, Missouri.

Prince and others perpetuated a conspiracy to defraud victims across the country, many of whom were older or otherwise susceptible to fraud. Prince and her co-conspirators fraudulently induced consumers into making payments related to purported magazine subscriptions. Telemarketers working for RCA and at Prince's direction called lists of consumers and made a series of lies and misrepresentations, including that the telemarketer was calling from the consumer's existing magazine company and was calling in order to reduce the monthly payments for an existing magazine subscription. But in reality, the company had no existing relationship with the consumer and tricked the consumer into paying for an expensive, new magazine subscription that they did not want or understand they were ordering.

Prince worked as a manager for RCA. In that role, she used fraudulent sales scripts, which were provided by the company, to call victims and make a series of deliberate lies and misrepresentations about how the company could lower the monthly cost of a subscription or renew a subscription that the victim was receiving at a lower cost. This was not true, and Prince and the company charged the victim for a subscription that they did not want. Prince also supervised the day-to-day operations of the call center and trained telemarketers to use the fraudulent sales scripts.

In the course of the scheme, Prince and others at the RCA call center defrauded thousands of victims and collected over $4 million from victims as a result of the fraudulent scheme.

**B. Defendant's Criminal History**

Prince has no known criminal history, apart from the conduct in this case.

**C. Defendant's Personal History**

Prince faced no shortage of challenges in her life. She was born and raised in Connecticut, and later moved with her family to Florida. Her parents separated when she was a young, and each remarried. Her parent's future relationships were tumultuous, including step parents who were physically and mentally abusive to her.

At age 12, Prince began rebelling by running away, smoking cigarettes, and staying out past her curfew. She was also treated for repression as a teenager. Ultimately, at age 17, she moved out of her family home and dropped out of high school.

In her early twenties, Prince had a son with her long-term partner. Shortly after that, her partner was involved in a serious car accident that left him disable and unable to care for their son. Prince currently lives in Thayer, Missouri. She works and takes care of her family.

**II.  Argument**

    **A.  Legal Background**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49

(2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50; 18 U.S.C. § 3553(a). The Section 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

### B. The Presentence Investigation and Guidelines Calculations

The United States has reviewed the PSR prepared by the U.S. Probation Office. The United States objected to the PSR to the extent that it applied an aggravating role enhancement greater than 2-levels, but did not object to the facts included in the PSR. The PSR concluded that the total offense level is 31, and the criminal history category is I. Based on this, the Guidelines range term of imprisonment is 108 to 135 months. (PSR ¶ 186.)

### C. The Appropriate Sentence

A careful consideration of the Section 3553(a) factors warrants a sentence of one year and a day imprisonment.

1. The Nature and Circumstances of the Offense.

Prince's conduct was unquestionably serious and warrants a correspondingly serious sentence. She participated in a large, nationwide fraud scheme that targeted thousands of elderly and otherwise vulnerable victims. Although she knew that she and others at the company were committing fraud, she continued to work there day in and day out and perpetrated the scheme for years. Prince operated as a manager at RCA, further perpetuating the fraud by training and supervising others.

At the same time, Prince played only a small part in a large-scale fraud. Although Prince worked as a manager, she did not own or found RCA. Her role of a manager was somewhat limited to overseeing the day-to-day operations. She did not develop the fraud scheme or write or edit the fraudulent scripts. She was not actively involved in obtaining or trading lead lists. She did not meet with or trade tips with managers or owners at other companies. She did not actively respond to Better Business Bureau, Attorneys General, or other consumer complaints. Nor did Prince get rich participating in the scheme—she was only paid a small, hourly wage for her work.

Although Prince was well-aware that she and others at the company were committing fraud, the fact that the companies she worked for operated an office and call center where numerous other telemarketers also worked provided an air of legitimacy to an illegitimate, fraudulent company. In many ways, this allowed the companies to recruit otherwise well-intended individuals like Prince, who were merely seeking a paycheck, into the fraudulent work. This is not an excuse for

5

Prince's conduct, although it helps explain how she became involved in it in the first place.

    2.    <u>The History and Characteristics of the Defendant.</u>

Prince has faced no shortages of challenges. Her endured tumultuous family circumstances, including abuse at the hands of her stepparents. She has also battled clinical depression. She never completed high school, in part because of these challenges, which likely prevented her from obtaining employment in a different, legitimate line of work and made her career in telemarketing more appealing.

    3.    <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Afford Adequate Deterrence</u>

In light of the seriousness and wide-spread nature of the offense, Prince requires a sentence that will not only prevent her from committing another offense in the future but will also provide general deterrence for others who operated similar fraudulent schemes brazenly throughout the country for decades. Prince and others who participate or consider participating in a similar scheme are more likely to be deterred from committing fraud if they learn there are serious consequences, and they will pay a stiff price for it. A significant sentence will promote respect for the law and reflect the damage to victims and the community as a whole as a result of a large-scale fraud scheme that preyed on elderly and otherwise vulnerable victims. At the same time, Prince has already dealt with the significant consequences and effects of a felony conviction, particularly in the three years since this case was indicted.

A sentence of a year and a day will serve the needs of sentencing to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment

for the offense, to afford adequate deterrence, and to protect the public from further similar fraud schemes.

### III. Conclusion

For all the above reasons, the United States respectfully requests that the Court vary downward and impose a sentence of a year and a day imprisonment.

Respectfully submitted,

Dated: November 27, 2023

ANDREW M. LUGER
United States Attorney

*/s/ Harry M. Jacobs*

BY: JOSEPH H. THOMPSON
HARRY M. JACOBS
MATTHEW S. EBERT
Assistant U.S. Attorneys